# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| TRACY E. COLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:10-CV-00321 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Tracy Coles, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Coles applied for DIB and SSI on November 14, 2007, alleging disability beginning on January 1, 2005. (Tr. 8, 125-31, 168.) The Commissioner denied his application initially and upon reconsideration, and Coles requested an administrative hearing. (Tr. 8, 62-69, 75-77, 82-84, 89-90.) A hearing was conducted by Administrative Law Judge ("ALJ") Daniel Mages on December 18, 2009, at which Coles, who appeared *pro se*, and a vocational expert testified. (Tr. 23-57.) On February 10, 2010, the ALJ rendered an unfavorable decision to Coles, concluding

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (Tr. 3-18.) The Appeals Council denied his request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3.) Coles then filed a complaint with this Court on September 10, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. FACTUAL BACKGROUND[2]

### A. Background

At the time of the ALJ's decision, Coles was forty-eight years old; had a high school education and taken some college classes; and possessed work experience as a taxi driver, fast food worker, and telemarketer. (Tr. 16, 32-33, 125, 167-70, 173, 212-20.) Coles alleges that he is disabled due to depression, a tear of the left cornea, carpal tunnel syndrome, intermittent low back pain, neck cramps, prostate cancer (in remission), and other mental disorders. (Opening Br. 2; Tr. 168.)

At the hearing, Coles testified that he lives with his girlfriend in a one-story home. (Tr. 30-31.) He performs his self care independently, but his girlfriend cooks and does the laundry. (Tr. 41-42.) He stated that he currently works about twenty-seven hours a week at a fast food restaurant. (Tr. 39.) In his spare time, he helps his mother, girlfriend, and girlfriend's father with home tasks; studies the Bible; watches television; and creates music on a keyboard. (Tr. 39-41, 43.) He enjoys attending church when his work schedule allows. (Tr. 42.)

As to his limitations, Coles testified that he suffers from back pain, which started after a car accident in 2000, and that his pain is triggered by lifting and, at times, standing. (Tr. 43.) He

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 710-page administrative record necessary to the decision.

2

intermittently uses orthotics and a back brace; he sparingly takes muscle relaxers because he feels they adversely affect his concentration. (Tr. 43-44.) He thinks he was assigned a twenty-five pound lifting limitation at some point. (Tr. 45.) Coles also reported that he has some blurriness in his left eye, which does not prevent him from driving but causes some difficulty reading. (Tr. 44-45.) He also reported numbness and tingling in his hands and wrists from carpal tunnel syndrome that impacts his stamina with tasks such as writing or playing music. (Tr. 43, 46.) He has wrist splints, but finds them cumbersome to wear while working. (Tr. 46.)

When asked about his past illegal drug use, Coles testified that he last used cocaine in March 2008. (Tr. 46-47.) He stated that he attends counseling for his mental health issues and regularly hears disparaging voices, such as the devil's. (Tr. 48-49.) He further admitted, however, that he does not consistently take his medication because when taking it he cannot "stay focused at all" at work. (Tr. 49, 51.) Coles represented that he cannot work full time because it is "too stressful." (Tr. 52.)

*B. Summary of the Relevant Medical Evidence*

Coles received care from the Veterans Administration ("VA") Hospital from July 2003 through January 2004. (Tr. 244-396.) In July 2003, he was diagnosed with cocaine abuse, episodic; possible dysthymia; and a personality disorder not otherwise specified (antisocial, passive aggressive). (Tr. 394.) In October, Coles was voluntarily admitted and was diagnosed with cocaine abuse, malingering, rule out depression secondary to cocaine, and a personality disorder not otherwise specified; he was assigned a current Global Assessment of Functioning

3

("GAF") score of 45 with a "highest past year" GAF of 55.[3] (Tr. 351-52, 361.) A social worker noted that Coles's behavior was "highly suggestive of malingering and feigning symptoms for secondary gain of admission and disability." (Tr. 381.) In December, Coles, who was homeless, again sought admission; the psychiatrist documented that Coles's behavior "appears to be characterological . . . as he has a [history] of malingering and [h]is efforts appear to [be to] gain housing via an inpatient setting . . . ." (Tr. 320.) In January 2004, Coles was diagnosed with cocaine-induced mood disorder, depressed; cocaine dependence, continuous; and alcohol abuse; he was assigned a current GAF of 55 and a highest past year GAF of 65. (Tr. 302.)

In March 2006, Coles was hospitalized at Manatee Glens for three days due to severe depression and suicidal ideation. (Tr. 231-32.) Coles reported an almost ten-year history of using crack cocaine on a daily basis; he stated, however, that, except for a relapse a month earlier, he had not used illegal substances in the past two years. (Tr. 231.) Upon mental status examination, Coles's speech was goal-directed and coherent; his motor behavior was normal; he denied having hallucinations or suicidal or homicidal ideation; his mood and affect were irritable; he was alert and oriented with normal concentration; and his cognition and judgment were mildly impaired. (Tr. 231.) He was diagnosed with substance-induced mood disorder, cocaine dependence, and assigned a GAF of 45. (Tr. 231-32.) He was prescribed Trazodone,

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id*. A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*. And, a GAF score of 71 to 80 reflects that if symptoms are present, they are "transient and expectable reactions to psychological stressors" (e.g., difficulty concentrating after family argument), causing no more than slight impairment in social, occupational, or school functioning. *Id*.

Zoloft, and Risperdal, and was "stable" upon discharge. (Tr. 231.)

In November and December 2007, Coles was seen at the VA Hospital. (Tr. 425-27.) He reported problems with depression, but denied having any suicidal thoughts; he stated that he had stopped using cocaine and was working at a fast food restaurant. (Tr. 426.) On November 8, 2007, Coles did not exhibit any obvious distress, and a physical examination was negative for all twelve systems reviewed. (Tr. 426-27.) A spinal x-ray revealed mild scoliosis but no evidence of compression fracture or narrowing of disk space. (Tr. 432.)

In January 2008, Coles underwent a mental status examination by Jean Badry, Ph.D. (Tr. 397-401.) Coles claimed he heard voices and that he had a history of suicidal thoughts and attempts. (Tr. 398.) He reported that he was currently taking Sertraline, Trazadone, Hydroxyzine, and Risperdone, but later admitted that he did not take these medications as prescribed. (Tr. 398.) Dr. Badry noted that Coles had worked at a fast food restaurant since August 2007 doing tasks such as cooking, mopping floors, and taking care of the parking lot. (Tr. 398-99.) Upon mental status examination, Coles was oriented; had no postural, speech, cognitive, gross, or fine motor abnormalities; and did not demonstrate any signs of anxiety or depression. (Tr. 399.) He thought that Coles's motivation and cooperation were "questionable," but that his persistence and attention span were good. (Tr. 399.) He was able to understand, remember, and carry out instructions. (Tr. 400.) Dr. Badry diagnosed Coles with malingering and a schizoid personality disorder and assigned him a GAF of 78. (Tr. 401.)

In February 2008, Coles was examined by Dr. Elpidio Feliciano. (Tr. 403-04.) He complained of a history of low back pain that radiates into his right leg, rating as a "8.5" on a ten-point scale. (Tr. 403.) Coles stated that he was not taking any prescription medication at the

5

time. (Tr. 403.)  Upon physical examination, Dr. Feliciano observed that Coles's posture was within normal limits and that his gait was slow and mildly antalgic. (Tr. 403-04.)  He documented that Coles was uncooperative during the examination in that he refused to sit, move his right leg, or bend. (Tr. 404.)  Coles's motor strength was normal in all extremities and his sensation was intact. (Tr. 404.)

That same month, Dr. R. Fife, a state agency physician, reviewed Coles's record and concluded that he could lift and carry ten pounds frequently and twenty pounds occasionally; stand or walk about six hours in an eight-hour day; sit for six hours in an eight-hour day; perform unlimited pushing or pulling; occasionally climb stairs, balance, stoop, kneel, crouch, or crawl, but never climb ladders, rope, or scaffolding; and must avoid concentrated exposure to hazards such as machinery or heights. (Tr. 451-58.)  Dr. F. Lavallo later affirmed this opinion. (Tr. 587.)

That same month, William Shipley, Ph.D., a state agency psychologist, reviewed Coles's record and concluded that he did not have a medically determinable mental impairment. (Tr. 449.)  He noted that Coles was currently working, that his most recent GAF score suggested that he had no deficits in functioning, and that a consultative psychological examination indicated that he was malingering. (Tr. 449.)  Dr. Shipley's opinion was later affirmed by a second state agency psychologist. (Tr. 588.)

In March 2008, Coles was admitted to the VA Hospital with complaints of suicidal ideation and hallucinations. (Tr. 459-60.)  He initially represented that he had not used illegal drugs in the last year but later admitted that he had used cocaine two days prior to his admission. (Tr. 460-61.)  Coles was prescribed Olanzapine to treat his psychotic symptoms, although the doctor thought that his symptoms might be due to drug use. (Tr. 461.)  The attending psychiatrist

noted that Coles had "maladaptive behaviors in response to stress and resorted to using cocaine with addiction appearing to be ongoing, untreated, with no active recovery program." (Tr. 462.) He diagnosed Coles with cocaine dependence, continuous; depression, not otherwise specified; substance-induced mood disorder with psychosis; major depression with psychotic features; and a personality disorder, not otherwise specified, with antisocial and histrionic traits. (Tr. 459.) Coles was assigned a GAF of 45 upon admission and 60 upon discharge. (Tr. 459.)

From June 2008 to January 2009, Coles received care from the VA Hospital. (Tr. 591-710.) In June, he reported that he had been doing fine over the past six months, although he had some continuing depression; he denied any suicidal or homicidal ideation. (Tr. 672.) He stated that he had not been taking all of his medications as prescribed because he thought some of them worsened his depression. (Tr. 672.) In November, Coles reported that he was doing well on his medications and with counseling; he again denied having any suicidal or homicidal ideation or hallucinations. (Tr. 659.) The psychiatrist documented that Coles's cognition and judgment appeared to be satisfactory. (Tr. 659.) In January, Coles was diagnosed with bilateral carpal tunnel syndrome and was given splints to wear at night, which he reported were helpful. (Tr. 609-10.) At a kinesiotherapy consultation, Coles exhibited full range of motion and normal muscle strength in his extremities; he denied having any pain. (Tr. 607.) In June 2009, Coles's thinking appeared linear, logical, sequential, and goal-directed and revealed no hallucination, delusion, or disorder; he denied any suicidal ideation and his cognitive abilities appeared to be stable. (Tr. 623.) He was assigned a diagnosis of major depression, recurrent. (Tr. 623.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and

7

transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

8

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. *The ALJ's Decision*

On February 10, 2010, the ALJ rendered the decision that ultimately became the Commissioner's final decision. (Tr. 8-18.) He found at step one of the five-step analysis that Coles was presently working twenty-seven hours per week and had worked at a level consistent with substantial gainful activity in the fourth quarter of 2005 and from the third quarter of 2008 through at least the third quarter of 2009. However, since this work activity was not dispositive

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9

of the entire period at issue, he continued to step two of the sequential evaluation. (Tr. 10-11.) At step two, the ALJ concluded that Coles's scoliosis, torn left cornea, obesity, carpal tunnel syndrome, depression, personality disorder, and polysubstance abuse were severe impairments. (Tr. 11.)

At step three, however, the ALJ determined that Coles's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 11.) Before proceeding to step four, the ALJ determined that Coles's testimony of debilitating limitations was "not consistent with or fully supported by the medical and other evidence of record" (Tr. 14), and that he had the following RFC:

> [T]he claimant has the residual functional capacity to perform a range of light exertional level as follows: sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work at unprotected heights or around dangerous moving machinery; frequent fine and gross manipulation; no vibrating tools; no more than occasional reading; simple and repetitive work with the ability to attend and concentrate for two hours at a time; and no more than superficial interaction with the general public, coworkers or supervisors.

(Tr. 13.)

Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four that Coles was unable to perform any of his past relevant work. (Tr. 16.) The ALJ then concluded at step five that he could perform a significant number of light work jobs within the economy, including inspector/hand packager, folder of laundry products, and bagger of garments. (Tr. 17.) Accordingly, Coles's claims for DIB and SSI were denied. (Tr. 17-18.)

10

*C. Discussion*

Here, Coles does not articulate, much less develop, an argument purporting a specific error by the ALJ. Rather, his appeal amounts to no more than a plea to this Court to reweigh the evidence, hoping that it will come out in his favor this time. Of course, a plea to the Court to reweigh evidence or resolve conflicts in evidence is ultimately unavailing. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (explaining that the court is not allowed to substitute its judgment for the ALJ by "reweighing evidence" or "resolving conflicts in evidence").

An ALJ's assessment of a claimant's RFC "is based upon consideration of *all* relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p (emphasis added); *see* 20 C.F.R. §§ 404.1545, 416.945. Here, the ALJ concluded that Coles had the RFC to perform light work, which generally requires the ability to lift ten pounds frequently and twenty pounds occasionally and stand or walk six hours out of an eight-hour workday, *see* 20 C.F.R. §§ 404.1567, 416.967, except that he found that Coles could only occasionally climb, balance, stoop, kneel, crouch, crawl, or read, and never climb ladders, ropes, or scaffolds, work at unprotected heights or around dangerous moving machinery, or use vibrating tools. (Tr. 13.) In addition, he found that Coles could frequently perform fine and gross manipulation and simple and repetitive work with the ability to attend and concentrate for two hours at a time; however, Coles could engage in no more than superficial interaction with the general public, coworkers, or supervisors. (Tr. 13.)

11

As the ALJ explained, this RFC is consistent with, and, in fact, even *more* conservative than, the limitations opined by Dr. Fife and Dr. Lavallo, the state agency physicians, who concluded in February 2008 that Coles could perform light work that did not require more than occasional climbing, stooping, kneeling, crouching, crawling, or reaching, but never balancing or concentrated exposure to hazards, such as machinery or heights. (Tr. 451-58, 587.) In choosing to rely upon these physicians' opinion, the ALJ observed that Dr. Fife and Dr. Lavallo explicitly considered Dr. Felicia's examination findings and that Coles's x-rays showed only mild scoliosis and no degenerative disk disease. (Tr. 14; Tr. 452.) The ALJ also considered the findings of a January 2009 kinesiotherapy consultation, revealing that Coles had normal range of motion and full muscle strength in all extremities, reported no pain, wanted to lose weight to get into shape, and had good rehabilitation potential. (Tr. 14, 607.)

Of course, "[t]he regulations, and this Circuit, clearly recognize that reviewing physicians and psychologist[s] are experts in their field and the ALJ is entitled to rely on their expertise." *Ottman v. Barnhart*, 306 F. Supp. 2d. 829, 839 (N.D. Ind. 2004); *see* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). Moreover, in this instance there are no other medical source opinions of record that assigned Coles more restrictive limitations than the state agency physicians. *See generally Eichstadt v. Astrue*, 634 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports [his] claims of disability."). Therefore, the ALJ's RFC from a physical standpoint is indeed supported by substantial evidence, and thus will not be disturbed.

Similarly, the ALJ's RFC with respect to Coles's mental limitations is supported by substantial evidence. The ALJ accommodated Coles's mental impairments by limiting him to simple, repetitive work that requires no more than superficial interaction with the public, coworkers, or supervisors. These restrictions, like the physical restrictions, are more conservative than any assigned by a medical source of record.

In arriving at these restrictions, the ALJ considered that, except when Coles had used illegal substances or been off of his medications, the VA records indicated that he was cognitively intact during his visits with no significant symptoms other than depression. (Tr. 15-16.) The ALJ also considered the opinion of Dr. Brady, who diagnosed Coles with malingering and a schizoid personality and assigned him a GAF of 78, reflective of only a "slight" impairment in social or occupational functioning. (Tr. 15.) In particular, the ALJ noted that Dr. Brady thought that Coles's motivation and cooperation were questionable and that his attempts at tasks appeared to represent an "underestimation of his actual functioning." (Tr. 15.)

In addition, the ALJ considered Coles's ability to work twenty-seven hours a week at a fast food restaurant during his alleged period of disability. (Tr. 16); *see Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."). And, earlier in his decision, the ALJ properly considered Coles's other daily activities, including that he performs home care tasks for himself and others, goes to church, reads, and writes and plays music. (Tr. 12); *see* 20 C.F.R. §§ 404.1545, 416.945 (instructing the ALJ to consider *all* of the relevant evidence in the case record when assessing a claimant's RFC); *Gardner v. Barnhart*, No. 02 C 4578, 2004 WL 1470244, at *13 (N.D. Ill. June

13

29, 2004) (considering a claimant's limitations in activities of daily living when assigning her RFC); SSR 96-8p ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [r]eports of daily activities [and] . . . attempts to work . . . .").

Of course, when assessing an RFC, the ALJ also determined the credibility of Coles's symptom testimony, concluding that it was "not consistent with or fully supported by the medical and other evidence of record." (Tr. 20); *see Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (explaining that making a credibility determination is inherent in an ALJ's RFC assessment). Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435.

In determining Coles's credibility, the ALJ noted that the objective medical evidence did not support the severity of Coles's subjective complaints. (Tr. 14); *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929; *Hall v. Barnhart*, No. 1:04-cv-1847-DFH-TAB, 2006 WL 3206096, at *4 (S.D. Ind. June 15, 2006) (explaining that the lack of objective medical evidence is one factor to be considered by the ALJ when making his credibility determination). For example, the ALJ specifically observed that in November 2007 Coles's physical examination resulted in negative findings for all twelve systems and that an x-ray showed mild scoliosis but no evidence of a compression fracture or narrowing of the disk spaces. (Tr. 14.)

The ALJ also commented that although Coles complained of back problems, he had not required or received regular treatment related to back issues. (Tr. 14); *see* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p (explaining that a claimant's treatment is a factor that the ALJ should consider when determining a claimant's credibility). And, as stated above, the ALJ properly considered other evidence, such as Coles's daily activities and work activity, in determining his credibility. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p (explaining that a claimant's daily activities should be considered when determining a claimant's credibility); *see also Berger*, 516 F.3d at 546 (finding claimant's part-time work as a carpenter cut against his claim that he was disabled).

In short, the ALJ adequately articulated his reasoning for the determination that Coles's testimony of debilitating limitations was not consistent with or fully supported by the evidence, and his determination is not "patently wrong." *Powers*, 207 F.3d at 435. And, after determining Coles's credibility and resolving any conflicts in the medical evidence, the ALJ arrived at an RFC that is supported by substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (articulating that the final responsibility for deciding the claimant's RFC and whether he is disabled is "reserved to the Commissioner"). As a result, Coles's plea for a remand is unavailing, and the Commissioner's final decision will be affirmed.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The

Clerk is directed to enter a judgment in favor of the Commissioner and against Coles.

SO ORDERED.

Enter for this 1st day of November, 2011.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge